UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                           :

S.H.W. and W.S.C., individually and on behalf of their : <br>
minor child, M.C.,                           :

                   Plaintiffs,         :              21 Civ. 4808 (JPC)
                                         :

        -v-                           :           <u>OPINION AND ORDER</u>
                                       :

                                       :

NEW YORK CITY DEPARTMENT OF EDUCATION,  :

                                       :

                 Defendant.         :

                                       :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs S.W.C. and W.S.C. are the parents of M.C., a minor child with learning disabilities who has attended the Cooke School and Institute ("Cooke") since the 2014-15 school year. In this action, they seek review of two administrative decisions issued by a State Review Officer ("SRO") pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*, a statute ensuring that "all children with disabilities have available to them a free appropriate public education," *id.* § 1400(d)(1)(A). Claiming that Defendant New York City Department of Education has failed to properly implement the IDEA's "pendency" or "stay-put" provision, *id.* § 1415(j), they ask the Court to vacate the portions of those SRO decisions awarding them reimbursement for tuition at Cooke for only the portion of the 2020-21 school year beginning on September 14, 2020, to order Defendant instead to reimburse them for tuition at Cooke for the portion of the 2020-21 school year beginning July 1, 2020, and to grant them additional injunctive and declaratory relief. In response, Defendant asks the Court to vacate the same portions of those two SRO decisions, to order that Defendant need reimburse Plaintiffs for tuition at Cooke for only

the portion of the 2020-21 school year beginning on December 8, 2020, and to deny the further injunctive and declaratory relief that Plaintiffs seek.  Each party has now moved for summary judgment.  For reasons that follow, each motion is denied in part and granted in part.  Because the Court agrees with Plaintiffs as to the analysis of M.C.'s pendency placement, Defendant is ordered to provide reimbursement for M.C.'s enrollment at Cooke for the period beginning on July 1, 2022. But because Plaintiffs have not established their entitlement to further equitable relief, the Court will not issue the injunction or declaratory judgment that Plaintiffs seek.

## I.  Background

### A.    Pendency

The IDEA requires state or local educational agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).  While such proceedings are ongoing, the "pendency" or "stay-put" provision of the IDEA, *id.* § 1415(j), governs the child's educational placement, requiring that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child."  *Id.*  Under the Second Circuit's interpretation of the pendency provision, "a child is entitled to remain in his or her placement at public expense during the pendency of an IEP [or 'Individualized Education Program'] dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).  That entitlement continues "until the relevant administrative and judicial proceedings are complete."  *Id.* (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014)).  Pendency disputes "generally focus[] on identifying the child's 'then-current educational placement,' as it is the only educational

program the school district is obligated to pay for during" pendency.  *Id.* at 532 (quoting 20 U.S.C.
§ 1415(j)).

Federal regulations promulgated to implement the IDEA set forth the stages of a state or
local administrative proceeding through which parents may challenge a child's educational
placement, and they further impose deadlines by which those stages must occur in each such
proceeding.  First, a parent initiates proceedings by filing a due process complaint.  34 C.F.R.
§ 300.507(a).  Within fifteen days of receiving notice of that complaint, the educational agency
must hold a resolution meeting with the parent and relevant agency staff, *id.* § 300.510(a)(1),
unless the parties waive that requirement or enter mediation, *id.* § 300.510(a)(3).  If the agency
fails to resolve the complaint within thirty days of receipt, the proceedings may then progress to a
due process hearing.  *Id.* § 300.510(b)(1).  At that point, the agency has forty-five days to issue a
decision on the due process complaint and mail it to each of the parties.  *Id.* § 300.515(a).  Thus, a
final decision must be rendered on a due process complaint seventy-five days after its receipt by
the educational agency (the "compliance date").  In certain circumstances, however, that timeline
may be accelerated:  if the resolution meeting is waived, or if prior to the end of the thirty-day
period the parties agree that mediation or the resolution meeting will not yield agreement, the forty-
five day timeline begins on the next day.  *Id.* § 300.510(c)(1)-(2).

## B.     State Administrative Proceedings[1]

Since the 2014-15 school year, M.C. has attended Cooke, and Defendant has provided him
with transportation to and from school.  Pls. 56.1 Stmt. ¶ 4.  During each of the 2014-15 to 2018-19

---

[1] The following facts are drawn from the Administrative Record, Dkt. 40-1 to -3, and from
the exhibits submitted by the parties in connection with their motions for summary judgment, *see
Hilalgo v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 98 (JGK), 2021 WL 2827037, at *2 (S.D.N.Y. 2021),
as well as from Plaintiffs' Local Civil Rule 56.1 Statement of Undisputed Material Facts, Dkt.

school years, Plaintiffs claimed they were entitled to reimbursement from Defendant for M.C.'s tuition at Cooke, and Defendant settled the claim. *Id.* ¶ 5. The present dispute between the parties concerns three due process complaints relating to the 2019-20 and 2020-21 school years.

The first relevant due process complaint, dated October 17, 2019, Dkt. 39-1 (the "2019-20 DPC"), initiated administrative proceedings (the "2019-20 Proceedings") concerning M.C.'s educational placement during the 2019-20 school year. In the 2019-20 DPC, Plaintiffs alleged that Defendant had failed to provide M.C. with a free appropriate public education for the 2019-20 school year. Record at 1-59. On October 29, 2019, Edgar De Leon was appointed as the Impartial Hearing Officer ("IHO") tasked with holding a hearing on the 2019-20 DPC. *Id.* That hearing took place before IHO De Leon on May 7, 2020. *Id.* He then issued a Findings of Fact & Decision dated September 14, 2020 (the "2019-20 FOFD"), *id.* at 1-78, finding that Defendant had denied M.C. a free appropriate public education, *id.* at 1-65, and ordering Defendant to pay the cost of M.C.'s tuition at Cooke for the 2019-20 school year, *id.* at 1-77. IHO De Leon further found that "the hearing record does not support a finding that the DOE denied the student a [free appropriate public education] due to the lack of provision for special transportation for the 2019-2020 school year." *Id.* at 1-76. That finding, however, was based on the absence in the record of any evidence pertaining to M.C.'s transportation, including evidence "as to the student's need for special transportation during the 2019-2020 school year or . . . that special transportation was requested at an IEP meeting or included in the student's 2019-2020 IEP [or] . . . as to how the student was

_____

37-1 ("Pls. 56.1 Stmt."), to the extent that it is not disputed in Defendant's Local Civil Rule 56.1 Counter-Statement of Disputed Material Facts, Dkt. 46 ("Deft. Counter 56.1 Stmt."). Citations to the Administrative Record will consist of two numbers separated by a hyphen, the first designating one of the three exhibits to Docket Number 40, which together contain the Record, and the second designating an ECF-generated page number for that exhibit. When there is no dispute as to a material fact, the Court cites only to Plaintiffs' Rule 56.1 statement.

transported to and from the private school each day during the 2019-2020 school year." *Id.* Furthermore, IHO De Leon explicitly cautioned that the 2019-20 FOFD "does not constitute a determination regarding the student's entitlement to . . . suitable transportation as available to students attending nonpublic schools 'for the purpose of receiving services or programs similar to special education programs recommended' by the [Committee on Special Education]." *Id.* (quoting N.Y. Educ. Law § 4402(4)(d)). The 2019-20 FOFD was not appealed. *See, e.g.*, *id.* at 1-11 (describing the "unappealed September 14, 2020 decision by IHO De Leon related to the 2019-20 school year").

The second relevant due process complaint (the "First 2020-21 DPC"), dated July 1, 2020, *id.* at 1-46 to -52, gave rise to administrative proceedings concerning M.C.'s educational placement during the 2020-21 school year (the "First 2020-21 Proceedings"). In the First 2020-21 DPC, Plaintiffs alleged that Defendant deprived M.C. of a free appropriate public education for the 2020-21 school year. *Id.* at 1-47. They further claimed that Defendant should be required to fund M.C.'s placement at Cooke during the pendency of the First 2020-21 Proceedings. *Id.* at 1-51. And, accompanying the First 2020-21 DPC, they submitted a Pendency Program Form identifying Cooke as M.C.'s pendency placement and identifying "[a]ppropriate round-trip, door-to-door special transportation" as a related service to be provided. *Id.* at 1-53 to -54. On November 13, 2020, IHO Harriet Gewirtz was appointed as the IHO for the First 2020-21 Proceedings. *Id.* at 1-21. On November 18, 2020, she held a hearing to determine M.C.'s pendency placement. *Id.* At that hearing, Defendant consented to a pendency placement for M.C. at Cooke starting on September 14, 2020, the date IHO De Leon issued the 2019-20 FOFD, Dkt. 39-15 ("11/18/20 Tr.") at 4:4-7, but refused to consent to a pendency placement starting on July 1, 2020, the date the First 2019-20 DPC was filed, *id.* at 5:11-16. Defendant further objected that Plaintiffs' request for door-

to-door special transportation was not authorized by the 2019-20 FOFD. *Id.* at 5:23-25. M.C.'s mother appeared at the hearing but was unable to testify because an interpreter had been provided in the wrong language. *Id.* at 2:18-3:25, 20:24-21:7. And because her testimony would be required to resolve the dispute between the parties, IHO Gewirtz adjourned the hearing. *Id.* at 23:2-7. The compliance date for a decision on the First 2020-21 DPC, however, was September 14, 2020, which had already passed. *Id.* at 17:11-12. And, at the hearing, neither party sought an extension of that deadline. *Id.* at 21:8-23. Thus, on the same day, IHO Gewirtz issued an order (the "Gewirtz Decision") dismissing the First 2019-20 DPC without prejudice on the grounds that she lacked the authority to continue the First 2019-2020 Proceedings after the compliance date. Record at 1-21.

Plaintiffs then sought an administrative appeal of the Gewirtz Decision by filing a Verified Request for Review with the Office of State Review on December 29, 2020. *Id.* at 1-29. On January 28, 2021, SRO Justyn P. Bates dismissed the appeal (the "First Bates Decision"). SRO Bates reasoned that vacating IHO Gewirtz's dismissal would be counterproductive given that Plaintiffs had filed a second due process complaint while the appeal was pending, as discussed below. *Id.* at 1-19. Nonetheless, SRO Bates found:

> 1) [Defendant] district has stipulated in this appeal that it is responsible for the stay-put funding of the student's placement at Cooke from September 14, 2020 to the present in accordance with the unappealed final decision of IHO De Leon in favor of the parent, which found Cooke was an appropriate unilateral placement for the student; and 2) the student has been entitled to a stay put placement under IDEA since due process was [initiated] on July 1, 2020 until the present.

*Id.* at 1-18. The First Bates Decision is one of the two that the parties challenge in this lawsuit.

The third relevant due process complaint, dated December 8, 2020, Dkt. 39-17 (the "Second 2020-21 DPC") at 1, gave rise to a second set of administrative proceedings (the "Second 2020-21 Proceedings") concerning M.C.'s educational placement during the 2020-21 school year. Like the First 2020-21 DPC, the Second 2020-21 DPC alleged that Defendant had deprived M.C.

of a free appropriate public education, *id.* at 3, and argued that pursuant to the IDEA's pendency provision Defendant should be required to fund tuition at Cooke and to provide special transportation during the pendency of the Second 2020-21 Proceedings, *id.* at 8.  On December 9, 2020, IHO Diane Cohen was appointed to hear the Second 2020-21 DPC.  Record at 2-59 to -60. On December 16, 2020, IHO Cohen held a hearing on M.C.'s pendency placement.  *Id.* at 2-60. In her decision, issued on December 28, 2020 (the "Interim Cohen Decision"), *id.* at 2-61, she found that the parties agreed that M.C.'s pendency would be at Cooke, *id.* at 2-60, but that they disagreed as to the retroactive start date of that placement, *id.* at 2-61.  However, because an appeal remained pending in the First 2020-21 Proceedings, and because it lay outside her purview "to review a decision of a hearing officer, to pre-empt a decision by the State Review Officer on appeal, or to make a pendency determination regarding a prior hearing request which has been dismissed," she declined to consider when pendency should properly begin and ordered only that M.C.'s pendency placement should be at Cooke as of December 8, 2020 (*i.e.*, the date the Second 2020-21 DPC was filed).  *Id.*

On January 29, 2021, following SRO Bates's issuance of the First Bates Decision on January 28, 2021, IHO Cohen was reappointed in the Second 2020-21 Proceedings to revisit the pendency determination she had made in the Interim Cohen Decision.  *Id.* at 2-66 to -67.  IHO Cohen then held a second hearing on February 11, 2021.  *Id.* at 2-68.  At that hearing, as in this lawsuit, Plaintiffs argued that Cooke was M.C.'s "operative placement" even before the 2019-20 FOFD was issued, and on those grounds urged IHO Cohen to modify the Interim Cohen Decision by determining that M.C.'s pendency at Cooke began on July 1, 2020, the filing date of the First 2020-21 DPC.  Defendant argued that IHO Cohen should leave unchanged her determination that M.C.'s pendency at Cooke began on December 8, 2020, the filing date of the Second 2020-21

7

DPC, *id.* at 2-69.  IHO Cohen then issued an amended decision (the "Amended Cohen Decision") dated February 16, 2021.  *Id.* at 2-71.  In the Amended Cohen Decision, she accepted neither party's position, finding instead that M.C.'s operative placement prior to the 2019-20 FOFD derived from an IEP dating from before the 2015-16 school year, *id.*, and that M.C.'s pendency placement shifted to Cooke only upon the issuance of the 2019-20 FOFD on September 14, 2020, *id.* at 2-69 to -71.  IHO Cohen declined to determine what pendency placement would have been in effect prior to September 14, 2020 based on the previous IEP.  *Id.* at 2-71.  She further failed to address M.C.'s entitlement to transportation.  *See generally id.* at 2-67 to -71.

As with the Gewirtz Decision, Plaintiffs sought review of the Amended Cohen Decision by filing a Verified Request for Review on March 30, 2021.  *Id.* at 2-81.  That Request for Review challenged, among other things, IHO Cohen's determination that M.C.'s pendency at Cooke began only on September 14, 2020, *id.* at 2-85 to -88, and her failure to address M.C.'s entitlement to transportation, *id.* at 2-89.  In its Verified Answer, Defendant challenged IHO Cohen's determination that M.C.'s pendency at Cooke dated back to September 14, 2020, the date on which the 2019-20 FOFD was issued, rather than beginning on December 8, 2020, the date on which the Second 2020-21 DPC was filed.  *Id.* at 3-55.  On April 29, 2021, SRO Bates decided that appeal (the "Second Bates Decision").  *Id.* at 2-56.  The Second Bates Decision affirmed the Amended Cohen Decision in full, dismissing both Plaintiffs' and Defendant's appeals.  *Id.*  SRO Bates dismissed Defendant's appeal based on his finding, in the First Bates Decision, that Defendant had stipulated to commencing M.C.'s pendency placement at Cooke on September 14, 2020.  *Id.* at 2-53.  And he dismissed Plaintiffs' appeal by separately considering and rejecting the three arguments Plaintiffs had presented—the same three arguments they have presented to this Court, *see* Dkt. 38 ("Pls. Br.") at 10-18—for why M.C.'s pendency placement at Cooke began on July 1,

2020 rather than September 14, 2020.  Record at 2-53 to -56.  SRO Bates further held that since

"the IHO determined that special transportation was not a part of the student's pendency, the issue

of special transportation will not be considered as part of pendency in this appeal."  *Id.* at 2-48 n.6.

This federal action then ensued.

## C.     Procedural History

On May 28, 2021, Plaintiffs filed their Complaint in this Court, seeking vacatur in part of

both the First and Second Bates Decisions.  Dkt. 1 ("Compl.") ¶ 1.  Defendant answered the

Complaint on July 22, 2021.  Dkt. 9.  Following unsuccessful settlement discussions, *see* Dkts. 26-

31, Plaintiffs filed their motion for summary judgment on June 7, 2022, Dkts. 37-39, and

Defendant filed its cross-motion for summary judgment on August 1, 2022, Dkts. 43-46.  On

September 15, 2022, Plaintiffs replied in support of their motion, Dkts. 48-49, and on October 13,

2022, Defendant replied in support of its motion, Dkt. 52.

## II.  Legal Standard

In IDEA cases, the usual summary judgment standards do not apply.  *See, e.g.*, *T.P. ex rel.*

*S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); *Viola*

*v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).  Instead, summary

judgment in IDEA cases is "in substance an appeal from an administrative determination, not a

summary judgment."  *See Arlington Cent. Sch. Dist. v. D.K. ex rel. C.K.*, No. 02 Civ. 2117 (DLC),

2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v.*

*Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't*

*of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005).  When reviewing IDEA administrative decisions, a

federal district court considers the record and any additional evidence the parties submit and bases

its determination on a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C); *T.P.*, 554 F.3d

at 252.  Because the IDEA authorizes "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), district courts exercise "equitable authority" when crafting appropriate relief.  *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993).

Courts do not, however, have free reign in such actions.  "The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy."  *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal quotation marks omitted).  The court "must give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotations marks omitted).  As the Second Circuit has explained, judicial review of state agency proceedings under the IDEA falls between two well-known standards of review, "requir[ing] a more critical appraisal of the agency determination than clear-error review" but "fall[ing] well short of complete *de novo* review."  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted).

"In deciding what weight is due . . . the analysis often will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive," such as the "quality and thoroughness of the reasoning, the type of determination under review, and whether the decision is based on the administrative body's familiarity with the evidence and the witnesses."  *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014) (internal quotation marks omitted); *see also M.H.*, 685 F.3d at 244.  In particular, "the district court should afford more deference when its review is based entirely on the same evidence as that before the

SRO." *M.H.*, 685 F.3d at 244.  On appeal to a federal court, the burden of demonstrating that an

SRO ruled incorrectly falls on the party challenging that decision.  *Id.* at 225 n.3.

### III.  Discussion

#### A.  Pendency

"The IDEA's stay-put provision provides in relevant part that during the pendency of any

administrative and judicial proceedings conducted pursuant to [20 U.S.C. § 1415] . . . the child

shall remain in the then-current educational placement of the child." *Ventura de Paulino*, 959 F.3d

at 531 (internal quotation marks and brackets omitted).  The parties disagree both about whether

administrative or judicial proceedings conducted pursuant to 20 U.S.C. § 1415 were pending from

July 1, 2020 to December 8, 2020 and about what M.C.'s then-current educational placement was

during that period.  The former dispute is easily resolved.  Plaintiffs filed the First 2020-21 DPC

on July 1, 2020.  Record at 1-46.  That DPC was pending before IHO Gewirtz until she dismissed

it via the Gewirtz Decision, which was issued on November 18, 2020.  *Id.* at 1-21.  And the appeal

of the Gewirtz Decision was pending until SRO Bates issued the First Bates Decision on January

28, 2021.  *Id.* at 1-19.  Thus, administrative proceedings initiated by the filing of the First 2020-21

DPC were pending throughout the period from July 1, 2020 to December 8, 2020.  And—as

reflected in Defendant's concession that pendency was triggered by Plaintiffs' filing of the Second

2020-21 DPC on December 8, 2020, *see, e.g.*, Dkt. 44 ("Deft. Br.") at 11—the administrative

proceedings commenced by filing a due process complaint are conducted pursuant to 20 U.S.C.

§ 1415.  Thus, 20 U.S.C. § 1415(j) requires Defendant to fund M.C.'s then-current educational

placement for the period starting on July 1, 2020 (*i.e.*, the date of the filing of the First 2020-21 DPC); the sole question is what his then-current educational placement for that period was.[2]

As mentioned, IHO Cohen concluded in the Amended Cohen Decision that the 2019-20 FOFD established Cooke as M.C.'s then-current educational placement once it was issued on September 14, 2020, but that before that date M.C.'s then-current educational placement was determined by an IEP that had been agreed to prior to the 2015-16 school year.  Record at 2-69 to -70.  In their appeal of the Amended Cohen Decision, Plaintiffs advanced three arguments for why IHO Cohen's determination of M.C.'s then-current educational placement was incorrect, *id.* at 2-53 to -56, the first of which relied primarily on the Second Circuit's decision in *Mackey ex rel. Thomas M. v. Board of Education*, 386 F.3d 158 (2d Cir. 2004).[3]

In that case, the school district received the plaintiffs' request for review of an adverse IHO decision on November 9, 2000.  *Id.* at 161.  New York regulations require the SRO to issue a decision within thirty days following receipt of the request for review.  *Id.* at 160 (quoting N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(2) (2004)); *accord* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(2) (2023).  But in *Mackey* the SRO instead issued his decision on November 21, 2001, nearly one year after the compliance date.  *Mackey*, 386 F.3d at 161.  Under the SRO's decision, the parties agreed, the private school where the plaintiffs had unilaterally placed their son constituted his educational placement for the purposes of pendency.  According to the defendant,

---

[2] Defendant's argument that pendency must begin on December 8 because "there is no legal basis for pendency to attach to a date that precedes an active due process complaint," Deft. Br. at 12 n.7, is unavailing: while it is true that the First 2019-20 DPC "was dismissed by the IHO (a decision which the SRO declined to reverse and remand)," *id.*, the subsequent affirmation on appeal of the dismissal of a due process complaint obviously does not entail that the due process complaint was not active before its dismissal was affirmed.

[3] Because the Court ultimately finds this argument to be successful, the remaining two arguments will not be discussed or addressed in this Opinion and Order.

however, the student's pendency placement was at the private school only for the period after the SRO's decision had been issued. *Id.* at 164. The Second Circuit disagreed. "If the SRO had issued its order within thirty days of the District's November 9, 2000 receipt of the parents' request for review of the IHO's decision," it reasoned, the private school "would have been found to be [the student's] pendency placement from December 9, 2000 forward, and the parents would, without question, have been entitled to tuition reimbursement on a pendency basis for at least part of the 2000–2001 school year." *Id.* at 164. Thus, on the defendant's position, the parents would be denied reimbursement "[o]nly because the SRO was derelict, through no fault of the parents." *Id.* Because allowing "such an outcome" would be "unfair to the parents," *id.*, the Second Circuit reasoned that the equitable authority granted by 20 U.S.C. § 1415(i)(2)(C)(iii) authorized a district court to order a school district to provide funding for pendency starting not on the date when the administrative decision establishing pendency actually was issued but rather on the date when it should have been issued under the governing regulations. *Id.* at 165.

In this case, the 2019-20 FOFD, which ordered Defendant to reimburse Plaintiffs for M.C.'s tuition at Cooke for the 2019-20 school year, established Cooke as M.C.'s then-current educational placement for the purposes of pendency. *E.g.*, Deft. Br. at 11 (identifying "the September 2020 FOFD as the existing source of pendency"). And Plaintiffs argue that because the 2019-20 FOFD was issued well after the regulatory deadline for resolving the 2019-20 DPC, the principle articulated in *Mackey* requires M.C.'s pendency placement at Cooke to be deemed effective not from September 14, 2020, the date when the 2019-20 FOFD was issued, but rather from the earlier date by when it should have been issued. *Id.* at 11-13.

SRO Bates rejected this argument in the Second Bates Decision because he found there to be "no factual basis in the hearing record to support [Plaintiffs'] allegations and IHO Cohen did

not have before her documentation of the extensions granted in the 2019-20 proceeding on which to base a finding that the September 14, 2020 decision was untimely."[4]   Record at 2-54.   In reviewing the decision of an SRO, however, a district court is not limited to the evidence contained in the administrative record but may further "hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii).   And whatever evidence SRO Bates may have considered, the preponderance of the evidence before this Court justifies a finding that the 2019-20 FOFD was not timely issued by the compliance date.[5]   As mentioned, federal and state regulation authorizes a hearing to take place on a parent's due process complaint if the educational agency has not resolved the complaint within thirty days of its receipt, 34 C.F.R. § 300.510(b)(1), then requires that a final decision be reached in the hearing within forty-five days after the expiration of that thirty-day period, *id.* § 300.515(a); *accord* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5.   The 2019-20 DPC was sent via electronic facsimile to Defendant's Impartial Hearing Office on October 17, 2019. 2019-20 DPC at 1; Pls. 56.1 Stmt. ¶ 6.   The seventy-five day period to reach a final decision therefore expired on December 31, 2019—a date obviously prior to the issuance of the 2019-20 FOFD on September 14, 2020.   Thus, that FOFD was not issued by the compliance date.

---

[4] SRO Bates additionally noted that *Mackey* concerned a delayed SRO decision, while in this case the untimely decision was issued instead by an IHO.   Record at 2-55 ("Even assuming that the above-referenced line of cases addressing the consequences of delayed State-level administrative decisions apply in the case of an allegedly delayed IHO decision . . . .").   But since Defendant is itself responsible for the IHO system, while SROs instead fall under the supervision of the State of New York, "*Mackey*, and its rationale, are equally – if not more so – applicable here."   *R.S. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2257 (JPO), 2022 WL 902671, at *2 (S.D.N.Y. Mar. 28, 2022).

[5] "[F]ederal courts reviewing administrative decisions must give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."   *M.H.*, 685 F.3d at 240.   But different degrees of deference are due to different types of administrative findings, *id.* at 244, and SRO Bates's finding as to whether IHO De Leon extended the compliance date involves no "persistent and difficult question[] of educational policy," *id.* at 240, and was not "based entirely on the same evidence as that before" the Court, *id.* at 244.

Federal and state regulation does provide, however, that "[a] hearing or reviewing officer may grant specific extensions of time beyond" the regulatory timelines "at the request of either party." 34 C.F.R. § 300.515(c); *accord* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(d)(i). Thus, even though the 2019-20 FOFD was not issued by the compliance date established by federal and state regulation, it may nonetheless have been timely if that date was extended pursuant to law. The 2019-20 FOFD itself stated explicitly that "[a]fter having adjournments granted at the request of and with the consent of the parties, or for good cause, the impartial hearing was held on May 7, 2020." Record at 1-59. SRO Bates cited this statement in support of his conclusion that, on the record before him, Plaintiffs had not shown the 2019-20 FOFD to be untimely. *Id.* at 2-54. Given the evidence in the record of this federal action, however, the Court finds that Plaintiffs have carried their burden of establishing that the 2019-20 FOFD was untimely.

First, Plaintiffs' counsel, Steven J. Alizio, has declared under penalty of perjury that "[f]rom October 18, 20[19] (when the DPC was filed) until May 7, 2020 (the date of the hearing relating to the 2019-2020 school year), neither the DOE nor Parents requested any adjournments and, similarly, neither party requested any extensions of the timeline to receive a decision in the matter as prescribed by 34 C.F.R. § 300.515(a)." Dkt. 39 ¶ 5. Furthermore, when an IHO does extend the compliance date, state regulations require the IHO to "promptly respond in writing to each request for an extension and [to] set forth the facts relied upon for each extension granted," with that response to "become part of the record." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(d)(iv). Thus, had IHO De Leon extended the compliance date, state regulation would have required him to authorize that extension in writing and to include the written extension in the

hearing record.[6]  And the evidence submitted to the Court does not indicate that the hearing record

for the 2019-20 Proceedings contains an entry for an extension of the compliance date.  Record at

1-59.  Particularly since multiple extensions of the compliance date would have been required,

given regulatory limits on the permissible length of such extensions, N.Y. Comp. Codes R. &

Regs. tit. 8, § 200.5(j)(5)(d)(i), the most plausible explanation for why no extension is reflected in

the record is simply that none was granted.  Lastly, Defendant, like Plaintiffs, was free to submit

additional evidence to this Court, but it produced no evidence whatsoever showing that the

compliance date was extended—no written communications with IHO De Leon in which an

extension was sought or was granted, and not even a declaration or affidavit in which the attorney

representing Defendant before IHO De Leon swore that such an extension had been granted.

Thus, the only evidence Defendant cites to support its denial that the compliance date had

been extended is the section of the 2019-20 FOFD that SRO Bates cited, in the Second Bates

Decision, in support of his conclusion that Plaintiffs had not established that the 2019-20 FOFD

was untimely:  "After having adjournments granted at the request of and with the consent of the

parties, or for good cause, the impartial hearing was held on May 7, 2020."  Record at 1-59; *see

also* Deft. Counter 56.1 Stmt. ¶ 12.  The Court finds, however, that on its most plausible

interpretation that sentence did not state that IHO De Leon had extended the compliance date—

that is, the date by which federal and state regulation required him to reach a final decision on the

2019-20 DPC.  As written, that sentence is ambiguous:  it describes "having adjournments granted"

but does not explicitly state exactly what was adjourned.  But because the subject of the sentence

---

[6] While regulation permits extensions to be granted orally, it further requires such oral
extensions to be memorialized in writing.  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(d)(iv).
In any event, it appears that no hearing occurred prior to December 31, 2020 at which IHO De Leon
could have orally granted an extension.  *See* Pls. 56.1 Stmt. ¶ 13.

is "the impartial hearing," not the compliance date, and because the participle "having" in the phrase "having adjournments granted" is most naturally read as modifying the subject of the sentence, the sentence is most naturally interpreted as describing adjournments of *the impartial hearing*, not adjournments of the compliance date.  The language of the sentence further supports that interpretation.  Both federal and state regulation use the term "extension," not the term "adjournment," to describe postponement of the compliance date.  *See* 34 C.F.R. § 300.515(c); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5).  IHO De Leon himself employed the term "extension" when discussing the compliance date.  Dkt. 39-2 ("5/7/20 Tr.") at 73:8-12.  And the record reflects that other IHOs—such as, for example, IHO Gewirtz—ordinarily respect this difference in terminology.  *See, e.g.*, 11/18/20 Tr. at 19:6-9 (distinguishing between "adjournment" of the hearing and "extension of the compliance date").  Furthermore, the 2019-20 FOFD mentions that adjournments were granted "at the request of and with the consent of the parties, *or for good cause*," Record at 1-59 (emphasis added), while federal and state regulations permit an extension of the compliance date only upon the parties' request, and not also for good cause, *see* 34 C.F.R. § 300.515(c); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(d)(i).  That adjournments may have been granted for good cause, then, suggests that those adjournments concerned the impartial hearing rather than the compliance date.

To be sure, these arguments do not conclusively exclude the possibility that the relevant sentence from the 2019-20 FOFD indicates that the compliance date was extended.  However, the evidence before the Court, taken together, weighs in favor of finding that no extension was granted.  On the one hand, Mr. Alizio, an officer of this Court, has sworn that none was granted, the record does not reflect that any was granted, and Defendant has utterly failed to produce evidence documenting the granting of an extension, which should hardly have been difficult to obtain if it

existed.  On the other hand, the 2019-20 FOFD contains a single sentence that is, at best, ambiguous as to whether one was granted.  By a preponderance of the evidence, then, Plaintiffs have shown that the 2019-20 FOFD was issued in violation of the compliance date.[7]  Under *Mackey*, therefore, the 2019-20 FOFD established that, for the purposes of pendency, M.C.'s "then-current educational placement," 20 U.S.C. § 1415(j), was at Cooke starting not on the date the 2019-20 FOFD was issued, September 14, 2020, but rather starting on the date it should have been issued, December 31, 2019.  *See R.S.*, 2022 WL 902671, at *2.

Because the 2019-20 FOFD established M.C.'s educational placement at Cooke starting December 31, 2019, his placement was at Cooke as of July 1, 2020, the date of the filing of the First 2020-21 DPC.  Once Plaintiffs triggered the IDEA's pendency provision with their administrative filing on that date, M.C. "was entitled to remain in his . . . placement at public expense during the pendency" of the First 2020-21 Proceedings.  *Ventura de Paulino*, 959 F.3d at 531.  Since his placement on that date was at Cooke, he was entitled to remain at Cooke, at public expense, during the pendency of the First 2020-21 Proceedings, which as discussed continued at least through December 8, 2020.  Defendant must therefore reimburse Plaintiffs not merely for the portion of the 2020-21 school year after December 8, 2020, which it does not dispute, but also for the period from July 1, 2020 to December 8, 2020.

---

[7] At the May 7, 2020 impartial hearing, IHO De Leon asked if there was "an application to extend the compliance date for receipt of the transcript and referencing the same in the decision," and Plaintiffs subsequently requested such an extension.  5/7/20 Tr. at 73:8-18.  Because Defendant does not argue that this request for an extension nearly four months after the compliance date could retroactively excuse the failure to render a decision by December 31, 2019, the Court does not consider that argument here.  Furthermore, given that by law "[t]he impartial hearing officer shall not solicit extension requests," N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(d)(i), the extension granted at the impartial hearing would appear on its face to have been unlawful.

**B.    Equitable Relief**

In addition to tuition reimbursement, Plaintiffs seek two forms of further equitable relief: first, an injunction "prohibiting the DOE from denying pendent placement or relief for the same to M.C. based on the delays of the hearing timeline," Pls. Br. at 20, and, second, a declaratory judgment both setting forth the educational placement to which M.C. is entitled during the pendency of First and Second 2020-2021 Proceedings, which as of the parties' latest filings had not reached a resolution on the merits, Deft. Reply at 5, and declaring that "that several of their procedural rights under the IDEA and other laws have been violated," Pls. Br. at 22. *See* Compl. at 40-42 (Prayer for Relief ¶¶ 1, 3, 4). Because the Court finds that Plaintiffs have not established their entitlement to either form of equitable relief, the Court will grant neither.

To obtain a permanent injunction, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In Plaintiffs' opening brief, they argue that the irreparable injury they have suffered for which remedies at law cannot compensate them is that they must "continue to engage in a significant amount of litigation—and, relatedly, to incur substantial legal fees—in order to enforce M.C.'s pendency rights." Pls. Br. at 21. But existing remedies are plainly adequate to compensate Plaintiffs for the cost of pursuing meritorious litigation against Defendant: the IDEA explicitly permits prevailing parents to recover attorneys' fees, *see* 20 U.S.C. § 1415(i)(3)(B), while any meritless litigation Plaintiffs might pursue, which would not result in a fees award, would necessarily challenge conduct not forbidden under any injunction to which they might be entitled.

And the mere fact that Plaintiffs must litigate to vindicate their (or M.C.'s) rights does not on its own warrant injunctive relief, particularly when they will be compensated for the costs of any successful case they bring.  In their reply, Plaintiffs further argue that "the harm to Plaintiffs has been imminent and is ongoing as M.C.'s tuition for the 2020-21 school year remains unpaid well over a year after the school year concluded."  Dkt. 48 ("Pls. Reply") at 10.  Plaintiffs, however, fail to explain why this injury is irreparable; indeed, this Opinion and Order itself repairs the injury of unpaid tuition by ordering Defendant to reimburse Plaintiffs for M.C.'s tuition at Cooke, pursuant to the IDEA's pendency provision, for the portion of the 2020-21 school year beginning on July 1, 2020.  Plaintiffs' request for a permanent injunction is therefore denied.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  As the Second Circuit has explained, a court must consider six factors in deciding whether to issue a declaratory judgment:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023) (internal quotation marks omitted).  Plaintiffs seek a judgment primarily declaring that Defendant's conduct has deprived them of various rights secured by state and federal law.  Compl. at 40-41 (Prayer for Relief ¶ 1).  In their briefing, however, Plaintiffs focus entirely on arguing that they have, in fact, been deprived of their rights, and present no argument whatsoever for why the factors that govern a district court's exercise of discretion favor issuing a declaratory judgment in this case.  *See*

*generally* Pls. Br. at 22-25; Pls. Reply at 3.  On its own, Plaintiffs' own failure to argue that the declaratory judgment sought would be an appropriate exercise of discretion prevents them from establishing their entitlement to relief.  And the Court further finds that issuing the requested declaratory judgment would not be an appropriate exercise of discretion.  Given that this Opinion and Order resolves M.C.'s pendency placement for the 2020-21 school year, further itemizing the specific laws and regulations that Defendant may have violated would neither serve a useful purpose in clarifying or settling legal issues nor finalize a controversy and offer relief from uncertainty, and would instead be an inefficient use of judicial resources.  In its discretion, the Court therefore declines to issue Plaintiffs declaratory relief.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted and Defendant's motion for summary judgment is denied to the extent that the portion of SRO Bates's decision in SRO Appeal No. 21-084, Record at 2-42 to -56, identifying September 14, 2020 as the effective date of M.C.'s pendency at Cooke is vacated, and that Defendant is ordered to provide reimbursement for M.C.'s tuition at Cooke for the portion of the 2020-21 school year beginning on July 1, 2020.[8]  Plaintiffs' motion is denied and Defendant's motion is granted as to Plaintiffs' requested equitable relief in the form of a permanent injunction and a declaratory judgment.  The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 37

---

[8] In addition to an order that Defendant "fund the tuition associated with M.C.'s placement at Cooke . . . retroactive to July 1, 2020," Plaintiffs further seek an Order that Defendant "provide special transportation to and from Cooke retroactive to July 1, 2020 and until Plaintiffs' underlying administrative case for the [school year] at Issue is finally resolved."  Compl. at 41 (Prayer for Relief ¶ 2).  The Complaint, however, acknowledges that M.C. "has been provided with [special] transportation during his time at Cooke."  Compl. ¶ 39 n.3.  Because Plaintiffs do not allege that Defendant has violated a right to transportation to and from school accorded to M.C. by the IDEA, the Court determines, pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii), that an order addressing M.C.'s right to special transportation would not constitute appropriate relief in this case.

and 43.  By April 14, 2023, the parties shall submit a joint status letter indicating whether Plaintiffs request any further relief in this case, including any request for attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), and, if so, whether they believe it would be more productive to pursue such requests through negotiation and settlement or through motion practice.

      SO ORDERED.

Dated: March 31, 2023
      New York, New York

                                    JOHN P. CRONAN
                            United States District Judge